UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| VINCENT S. PHILLIPS,<br><br>Plaintiff,<br><br>v.<br><br>DEAN BORDERS, et al.,<br><br>Defendants. | Case No. EDCV 16-01568-MWF (JDE)<br><br>MEMORANDUM AND ORDER DIMISSING SECOND AMENDED COMPLAINT WITH LEAVE TO AMEND |

## I.
## BACKGROUND

On July 18, 2016, Plaintiff Vincent S. Phillips ("Plaintiff"), who was at that time a prisoner at the California Institute of Men ("the Prison") in Chino, California, filed a pro se civil rights complaint pursuant to 42 U.S.C. § 1983 ("Section 1983" or "§ 1983"). Dkt. 1 ("Complaint"). By order dated September 7, 2016, the Court, performing its screening function under 28 U.S.C. 1915(e)(2) and 1915A, dismissed the Complaint with leave to amend. On February 6, 2007, Plaintiff filed a First Amended Complaint ("FAC"). By order dated May 5, 2017, the Court, again performing its screening function, entered an order dismissing the FAC with leave to amend.

Following extensions, on October 18, 2017, Plaintiff filed the instant Second Amended Complaint[1] ("SAC" Dkt. 33) alleging five purported causes of action under Section 1983 and the Eighth and Fourteenth Amendments against: (1) Dr. Duong, Plaintiff's alleged primary care physician ("PCP") at the Prison; (2) Dean Borders ("Warden Borders"), Warden at the Prison; (3) Dr. Garikaoarki, allegedly also a PCP for Plaintiff; (4) Dr. Oh, a physician in the Outpatient Housing Unit ("OHU") at the Prison; (5) Dr. Lee, a physician in OHU; (6) Dr. Cho, a physician in OHU; (7) Dr. Chin, a physician in OHU; (8) Dr. Farooq, allegedly the Chief Medical Officer for the Prison and a supervisor of Dr. Duong; (9) Patricia Navarro ("RN Navarro"), a registered nurse assisting Dr. Duong; and (10) Clark Kelso ("Kelso"), Chief of Health Care Appeals. SAC at 3-5 (page references to the SAC are taken from the Court's CM/ECF automatic pagination) and ¶¶ 12-19 (paragraph references are taken from the paragraph numbers provided by Plaintiff starting at page 8 of the SAC). Plaintiff is no longer at CIM. Id. at 2.

In accordance with 28 U.S.C. §§ 1915(e)(2) and 1915A, the Court must screen the FAC to determine whether the action is frivolous or malicious, fails to state a claim on which relief might be granted, or seeks money damages against a defendant who is immune from such relief.

## II.

## SUMMARY OF ALLEGATIONS IN THE SAC

Plaintiff alleges that on or about September 24, 2014, Plaintiff was transferred to the Prison with serious existing medical conditions for which he had been receiving treatment, including: serious aorta and heart problems,

---

[1] While Plaintiff refers to the instant submission as the "Third Amended Complaint," the Court notes that while Plaintiff has submitted three Complaints, this document represents the second attempt at revising the original Complaint, hence the Court will refer to the pleading as the Second Amended Complaint.

2

including a prior Type A aorta dissection surgery and a new Type B aorta heart dissection; migraine headaches; severe abdominal pain; hearing problems; glaucoma; and recent eye surgery. SAC ¶¶ 2-4. Plaintiff alleges that he had been prescribed a number of medical devices and appliances, such as a hearing aid, "tent to transition glasses," back and knee braces, and an orthotic boot. Id. ¶ 2. Plaintiff alleges that he advised Dr. Duong shortly after his arrival that "it was necessary for her to issue him chrono's for all his medical appliances, eye glasses, and orthotic [boots], for all of his above stated medical conditions" as well as requesting a follow-up visit from an ophthalmologist, but Dr. Duong refused his requests. Id. ¶ 3. Plaintiff alleges that the denial of the various medical appliances caused him pain, foot problems, headaches, and deterioration of hearing and vision. Id. Plaintiff further alleges that Dr. Duong, knowing that Plaintiff suffered from Hepatitis C, stage 3, refused to treat him, which Plaintiff alleges resulted in various harm, including cirrhosis of the liver, bruising, and other symptoms. Id. ¶¶ 5-6.

Plaintiff alleges that a cardiologist had recommended physical therapy and a change in medication but Dr. Duong refused the recommendations, instead doubling Plaintiff's existing medication over Plaintiff's protests, leading Plaintiff to suffer from an abnormal heart rate and to experience a fall and a blackout. SAC ¶ 7. Plaintiff also alleges that he made repeated requests for treatment of bruises and bleeding sores which flared up upon his arrival at the Prison, including requests to Dr. Farooq, whom Plaintiff alleges "is in charge of overseeing Medical 602 complaints"; yet Plaintiff alleges that Dr. Duong did not properly prescribe medication for the problem, but instead referred Plaintiff to a dermatologist. Id. ¶ 8.

Plaintiff alleges that "defendant" "changed [Plaintiff's permanent] medical chrono's" which Plaintiff alleges was undertaken to allow "defendant" to refuse Plaintiff's medical requests for his previously diagnosed conditions

3

and prescriptions.[2] SAC ¶ 9. Plaintiff alleges that "defendant" changed Plaintiff's medical records "many times" and this "removal/falsification of his medical records" prejudiced him because the California Department of Corrections and Rehabilitation ("CDCR") would only consider "defendant's" new documentation, not the prior "medical archived records," to analyze grievances. Id.[3] ¶¶ 9-10. Plaintiff alleges that after filing medical complaints against Dr. Duong, Plaintiff was placed in handcuffs and sent to OHU in retaliation for the complaints, although the administrative reason provided was "for plaintiff's safety because he kept falling." Id. ¶ 11. Plaintiff's chronological allegation of "the facts" supporting his claims ends, although additional allegations are contained in the ensuing pages of the SAC in the description of the alleged roles of the defendants and in setting forth the purported causes of action, and will be discussed by the Court as appropriate herein.

### III.
### STANDARD OF REVIEW

A complaint may be dismissed as a matter of law for failure to state a claim for two reasons: (1) lack of a cognizable legal theory; or (2) insufficient facts under a cognizable legal theory. See Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). In determining whether the complaint states a claim on which relief may be granted, its allegations of material fact must be taken as true and construed in the light most favorable to Plaintiff. See Love v.

---

[2] As Plaintiff refers to Dr. Duong as "defendant" in the preceding paragraphs, it appears Plaintiff also refers to him in ¶ 9 regarding alleged altered "chrono's." However, the Court notes that Plaintiff later asserts that Dr. Garikaoarki "changed all of plaintiff's chrono's" (SAC ¶ 16).

[3] In this and other portions of the SAC, Plaintiff refers to Exhibits. Although the SAC includes a list of purported exhibits (SAC at 28-29), no such exhibits are included and thus are not considered by the Court herein.

4

United States, 915 F.2d 1242, 1245 (9th Cir. 1989). Further, since Plaintiff is appearing pro se, the Court must construe the allegations of the complaint liberally and afford him the benefit of any doubt. See Karim-Panahi v. Los Angeles Police Dep't, 839 F.2d 621, 623 (9th Cir. 1988). However, "the liberal pleading standard . . . applies only to a plaintiff's factual allegations." Neitzke v. Williams, 490 U.S. 319, 330 n.9 (1989). "[A] liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled." Bruns v. Nat'l Credit Union Admin., 122 F.3d 1251, 1257 (9th Cir. 1997) (quoting Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982)). Moreover, with respect to Plaintiff's pleading burden, the Supreme Court has held that "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. . . . Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations omitted, alteration in original); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (to avoid dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." (internal citation omitted)).

If the Court finds that a complaint should be dismissed for failure to state a claim, the Court has discretion to dismiss with or without leave to amend. Lopez v. Smith, 203 F.3d 1122, 1126-30 (9th Cir. 2000) (en banc). Leave to amend should be granted if it appears possible that the defects in the complaint could be corrected, especially if a plaintiff is pro se. Id. at 1130-31; see also Cato v. United States, 70 F.3d 1103, 1106 (9th Cir. 1995) (noting that "[a] pro

5

se litigant must be given leave to amend his or her complaint, and some notice of its deficiencies, unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment") (citing Noll v. Carlson, 809 F.2d 1446, 1448 (9th Cir. 1987)). However, if, after careful consideration, it is clear that a complaint cannot be cured by amendment, the Court may dismiss without leave to amend. Cato, 70 F.3d at 1105-06; see, e.g., Chaset v. Fleer/Skybox Int'l, 300 F.3d 1083, 1088 (9th Cir. 2002) (holding that "there is no need to prolong the litigation by permitting further amendment" where the "basic flaw" in the pleading cannot be cured by amendment); Lipton v. Pathogenesis Corp., 284 F.3d 1027, 1039 (9th Cir. 2002) (holding that "[b]ecause any amendment would be futile, there was no need to prolong the litigation by permitting further amendment.").

## IV.
## DISCUSSION

The SAC alleges five claims: (1) falsifying medical records; (2) deliberate indifference and a failure to provide medical care; (3) deprivation of due process and cruel and unusual punishment; (4) conspiracy; and (5) failure to hire, train, supervise, and discipline personnel properly. SAC ¶¶ 21-48. The individual claims do not limit themselves to certain defendants; as a result, the Court will treat each claim as having been alleged against each defendant.

Section 1983 provides a method by which individuals can sue for violations of their federal rights. Cortez v. County of Los Angeles, 294 F.3d 1186, 1188 (9th Cir. 2002). To state a claim under § 1983, a plaintiff must allege that the violation was committed by a "person" acting under the color of State law. Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989). The other requisite element is that a right secured by the Constitution or laws of the United States was violated. Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006) (citing West v. Atkins, 487 U.S. 42, 48 (1988)).

A.  **Claims against Kelso**

Plaintiff alleges Kelso is "the medical receiver appointed by the three-judge court" overseeing, among other things, the CDCR medical grievance procedure, and was at all relevant times acting in that capacity. SAC ¶ 14. Other than unspecific references to promulgating procedures and policy, the SAC does not allege any specific act by Kelso, instead alleging that Kelso "is responsible for the acts and conduct of his subordinates." Id.

The claims for damages against Kelso fail as a matter of law because Kelso, purportedly sued exclusively for his actions or inaction as a court-appointed received, is entitled to quasi-judicial immunity, and Plaintiff has not pled facts that would remove his purported claims against Kelso from the cloak of such immunity. See Stump v. Sparkman, 435 U.S. 349, 355–56 (1978) (explaining doctrine of judicial immunity); Mosher v. Saalfeld, 589 F.2d 438, 442 (9th Cir. 1978) (judicial immunity extends to court-appointed receivers); Patterson v. Kelso, 698 F. App'x 393, 394 (9th Cir. 2017) (affirming dismissal of claims against Kelso without leave to amend based upon quasi-judicial immunity as a court-appointed receiver); see also Williams v. CDCR, No. 1:14-CV-01912-JLT (PC), 2015 WL 6669816, at *6 (E.D. Cal. Oct. 29, 2015) (affirming dismissal of claims against Kelso, noting that actions or inactions by receiver in connection with prisoner's medical needs fall within absolute quasi-judicial immunity);Martinez v. Beard, No. 1:14-CV-00405-AWI-JLT (PC), 2014 WL 5305883, at *9 (E.D. Cal. Oct. 15, 2014) (finding no allegation Kelso acted outside his jurisdiction despite plaintiff's allegation that he was liable as Receiver because he acted in such a way to deny medical care).

Plaintiff's conclusory allegations against Kelso relate solely to his role as a judicially appointed receiver. Kelso is entitled to absolute quasi-judicial immunity. As a result, all of the claims against him are subject to dismissal.

### B. First Cause of Action: Falsifying Medical Records

The First Cause of Action is entitled: "Falsifying Medical Records of Plaintiff." SAC at 18. There is no cognizable Eighth Amendment claim solely for the falsification of medical records in and of itself, although such an act may establish facts relevant to a claim for deliberate indifference. See Crisp v. Wasco State Prison, No. 13-01899, 2015 WL 3486950, at *5 (E.D. Cal. June 2, 2015) ("While falsification or alteration of medical records may supply facts relevant to an Eighth Amendment claim of deliberate indifference to serious medical needs, Plaintiff has no independent claim for relief under the Eighth Amendment for 'denial of accurate medical records.'"); Bartholomew v. Traquina, No. 10-3145, 2011 WL 4085479, at *3 (E.D. Cal. Sept. 13, 2011) ("The falsification of records itself is insufficient to state a cognizable claim of deliberate indifference to plaintiff's serious medical needs.").

Thus, the first cause of action in the SAC, as a stand-alone claim, fails to state a claim upon which relief can be granted and is subject to dismissal. However, the Court will interpret the factual averments in the first cause of action relating to the alleged falsification of medical records as offered in support for Plaintiff's claim for deliberate medical indifference.

### C. Second Cause of Action: Deliberate Indifference

The Eighth Amendment prohibits cruel and unusual punishment of a convicted prisoner. See Whitley v. Albers, 475 U.S. 312, 318-19 (1986). Prison officials are required to provide inmates with adequate medical care and the failure to do so can constitute an Eighth Amendment violation. See Estelle v. Gamble, 429 U.S. 97, 103-05 (1976); Colwell v. Bannister, 763 F.3d 1060, 1066 (9th Cir. 2014). A claim for inadequate medical care requires proof of both an objective component—i.e., the existence of a "serious medical need" —and a subjective component—a prison official's "deliberate indifference" thereto. Colwell, 763 F.3d at 1066.

An inmate's medical need is "serious" if failure to treat his or her medical condition "could result in further significant injury" or could cause "the 'unnecessary and wanton infliction of pain.'" Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (citation omitted). "Indications that a plaintiff has a serious medical need include '[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain.'" Colwell, 763 F.3d at 1066 (quoting McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1991), overruled on other grounds by WMX Technologies, Inc., v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997)).

A prison official is deliberately indifferent under the subjective element of the test only if the official "knows of and disregards an excessive risk to inmate health and safety." Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) (citation omitted). This "requires more than ordinary lack of due care." Farmer v. Brennan, 511 U.S. 825, 835 (1994) (quoting Whitley, 475 U.S. at 319). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837. A delay in treatment does not constitute a violation of the Eighth Amendment, unless the delay or denial was harmful. See McGuckin, 974 F.2d at 1060; Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985); Hunt v. Dental Dep't., 865 F.2d 198, 200 (9th Cir. 1998) ("[D]elay in providing a prisoner with dental treatment, standing alone, does not constitute an eighth amendment violation"). While the harm caused by delay need not necessarily be "substantial," McGuckin, 974 F.2d at 1060 & n.12, the Eighth Amendment is violated if "delays occurred to patients with problems so severe that delays would cause significant harm and that Defendants should have known this to

9

be the case," Hallett v. Morgan, 296 F.3d 732, 746 (9th Cir. 2002).

Furthermore, an individual defendant cannot be held liable on a civil rights claim unless the facts establish the defendant's personal involvement in the constitutional deprivation or a causal connection between the defendant's wrongful conduct and the alleged deprivation. See Redman v. County of San Diego, 942 F.2d 1435, 1446 (9th Cir. 1991) (en banc), abrogated on other grounds by Farmer v. Brennan, 511 U.S. 825 (1994). "A plaintiff must allege facts, not simply conclusions, which show that an individual was personally involved in the deprivation of his civil rights." Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998). "The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." Leer v. Murphy, 844 F.2d 628, 633 (9th Cir. 1988).

In addition, Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Twombly, 550 U.S. at 555 (alteration in original). Rule 8(e)(1) instructs: "[e]ach averment of a pleading shall be simple, concise, and direct." A complaint violates Rule 8 if a defendant would have difficulty responding to the complaint. Cafasso, U.S. ex rel. v. General Dynamics C4 Sys., Inc., 637 F.3d 1047, 1059 (9th Cir. 2011). This Court has discretion to dismiss for failure to comply with the requirements of Rule 8 even when the complaint is not "wholly without merit." McHenry v. Renne, 84 F.3d 1172, 1179 (9th Cir. 1996). "Rule 8(e), requiring each averment of a pleading to be 'simple, concise, and direct,' applies to good claims as well as bad, and is a basis for dismissal independent of Rule 12(b)(6)." Id.

      **1.**     **Deliberate Indifference Claims against Dr. Duong**

Taking the SAC's allegations as true and in the light most favorable to Plaintiff, the Court finds that the SAC has made sufficient allegations against Dr. Duong to pass screening, a finding that is without prejudice to Dr. Duong raising any motion or defense.

### 2. Deliberate Indifference Claim against Drs. Garikaoarki, Cho, Oh, Chin, and Lee and RN Navarro

The deliberate indifference claims against Drs. Garikaoarki, Cho, Oh, Chin, and Lee and RN Navarro do not allege sufficient facts, as opposed to legal conclusions or conjecture, to support a claim upon which relief can be granted under Rules 12(b)(6) and Rule 8 of the Federal Rules of Civil Procedure and Twombly, 550 U.S. at 555 n.3 (holding that Rule 8(a)(2) "requires a 'showing,' rather than a blanket assertion, of entitlement to relief"). General allegations that individuals were aware of alleged constitutional violations by others do not create liability under Section 1983; rather, each individual either must have done something to violate the Plaintiff's rights, or must have failed to take action, which he or she had a legal responsibility to take, and that failure caused the constitutional deprivation. See also Redman, 942 F.2d at 1446; Barren, 152 F.3d at 1194; Leer, 844 F.2d at 633; see also Starr v. Baca, 652 F.3d 1202, 1207 (9th Cir. 2011) (noting supervisory liability under § 1983 requires either personal involvement in the constitutional deprivation or a sufficient causal connection between "wrongful conduct" by the supervisor and the constitutional violation).

For example, Plaintiff alleges that Drs. Garikaoarki, Cho, Oh, Chin, and Lee and RN Navarro were "aware" that Plaintiff had been placed in OHU "in retaliation for filing … complaints." SAC ¶¶ 17, 18. However, Plaintiff does not allege a First Amendment violation, and, as the Court noted in its order dismissing Plaintiff's FAC, conclusory allegations regarding alleged retaliation cannot support such a claim. Dkt. 23 at 12. Further, alleged knowledge of a

constitutional violation by another does not, in and of itself, create liability. Similarly, general allegations that these defendants "were responsible for plaintiff['s] health care" (SAC ¶ 15) is a legal conclusion which the Court need not and does not accept as true in determining whether the SAC states a claim upon which relief can be granted. See Twombly, 550 U.S. at 555.

The Court notes that Plaintiff alleges at one point that "these four defendants opted to falsify medical records, documents to cover up the mistreatment of plaintiff . . ." (SAC ¶ 28), but the allegations are vague as to which defendants to whom Plaintiff refers, as the prior paragraph (SAC ¶ 27) lists five defendants. Further, in the typewritten "supporting facts" section of the SAC, Plaintiff appears only to describe treatment by Dr. Duong in connection with claims of falsifying medical records (see SAC at 8-12); yet in another handwritten portion of the Complaint, Plaintiff refers to Dr. Garikaoarki as having made retaliatory changes to Plaintiff's records, but the allegation is not tied to any treatment by Dr. Garikaoarki. SAC ¶ 16. With respect to defendants other than Dr. Duong and Dr. Garikaoarki, at a minimum, both the nature of who Plaintiff alleges falsified records and the alleged records falsified are hopelessly vague and do not permit those defendants to determine what it is they are alleged to have done under Rule 8. With respect to Dr. Garikaoarki, the SAC does allege he falsified medical records, but the SAC is inconsistent in this regard, and unlike the allegations against Dr. Duong, against whom Plaintiff makes specific allegations of deliberate indifference to serious medical needs beyond the claims of falsification of records, Plaintiff makes no such specific claims as to Dr. Garikaoarki. See Bartholomew, 2011 WL 4085479, at *3 (falsification of records itself is insufficient to state a cognizable claim of deliberate indifference to plaintiff's serious medical needs).

Accepting all of Plaintiff's factual allegations (but not legal conclusions)

as true, the Court find that the SAC fails to allege facts showing affirmative conduct by Drs. Garikaoarki, Cho, Oh, Chin, and Lee and RN Navarro rising to the level of deliberate indifference and further finds that the SAC fails to allege facts showing that those defendants bear responsibility for the deliberate indifference to Plaintiff's medical needs alleged against Dr. Duong. As a result, the claims against Drs. Garikaoarki, Cho, Oh, Chin, and Lee and RN Navarro are subject to dismissal.

### 3. **Deliberate Indifference Claim Against Warden Borders and Dr. Farooq**

Although in Iqbal the Supreme Court reaffirmed that "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior" (556 U.S. at 676), the Ninth Circuit has concluded that, at least in cases where the applicable standard is deliberate indifference (such as for an Eighth Amendment claim), Iqbal does not foreclose a plaintiff from stating a claim for supervisory liability based upon the "supervisor's knowledge of and acquiescence in unconstitutional conduct by his or her subordinates." Starr v. Baca, 652 F.3d 1202, 1207 (9th Cir. 2011). "A defendant may be held liable as a supervisor under § 1983 'if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" Id. at 1207 (citation omitted). A causal connection can be established "by setting in motion a series of acts by others" or "knowingly refusing to terminate a series of acts by others, which the supervisor knew or reasonably should have known would cause others to inflict a constitutional injury." Id. at 1207-08 (citations and alterations omitted). "A supervisor can be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or

for conduct that showed a reckless or callous indifference to the rights of others." Id. at 1208 (citation omitted).

Here, accepting Plaintiff's allegations as true and all reasonable inferences in Plaintiff's favor, the Court finds that the SAC meets the minimum threshold to pass screening for a claim of deliberate indifference against Dr. Farooq and Warden Borders, a finding that is without prejudice to defendants raising any motion or defense.

### D. Third Cause of Action: Due Process

Plaintiff entitles his purported third cause of action "Deprivation of Due Process and Cruel and Unusual Punishment." SAC at 9. The allegations in support of the Third Cause of Action do not refer to any particular defendant by name. Id. ¶¶ 34-40.

The Third Cause of Action appears to be based upon a claim that "defendants" did not adequately respond to Plaintiff's administrative grievances. See SAC ¶ 36.[4] The Ninth Circuit has held that inmates have no constitutionally protected interest in a prison grievance procedure. See Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (no liberty interest in processing of appeals because there is no entitlement to a specific grievance procedure); see also Mann v. Adams, 855, F.2d 639, 640 (9th Cir. 1988). Thus, a plaintiff cannot assert a due process claim based solely on the handling of his grievances. See McCoy v. Roe, 509 Fed. App'x 660 (9th Cir. 2013) (affirming dismissal of claims arising from defendants' processing of grievances).

Because Plaintiff has no federally protected right to a grievance procedure, a due process claim based upon a failure to address grievances does not state a claim against any defendant. Further, as the allegations in the third

---

[4] To the extent the Third Cause of Action asserts an Eighth Amendment claim, it appears to add nothing to and be duplicative of the Second Cause of Action.

14

cause of action do not add anything to the allegations already found to be insufficient as to Drs. Garikaoarki, Cho, Oh, Chin, and Lee and RN Navarro, this claim is equally subject to dismissal as to those defendants.

**E.     Fourth Cause of Action: Conspiracy**

In his fourth purported cause of action, Plaintiff concedes that some defendants did "not physically particpat[e] in the acts and omissions herein alleged, including but not limited to the acts of cruel and unusual punishment and denial of due process." SAC ¶ 42. Yet Plaintiff alleges that the defendants "conspired" and "aided and abetted" the "misconduct," by, among other things, "witnessing the immediate denial of medical treatment." Id. The only defendant actually named in the Fourth Cause of Action is Dr. Duong. Id.

A claim of civil conspiracy to violate civil rights requires the existence of an agreement or a meeting of the minds to violate the Plaintiff's constitutional rights, and an actual deprivation of those rights. Avalos v. Baca, 596 F.3d 583, 592 (9th Cir. 2010). Plaintiff alleges no specific facts suggesting an agreement or common objective among Defendants to violate his rights. See Franklin v. Fox, 312 F.3d 423, 441 (9th Cir. 2001) (quoting United Steel Workers of Am. V. Phelps Dodge Corp., 865 F.2d 1539, 1541 (9th Cir. 1989) ("To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy."). A plaintiff must state specific facts, not mere conclusory statements, to support the existence of an alleged conspiracy. Burns v. Cty. of King, 883 F.2d 819, 921 (9th Cir. 1989). Although pro se pleadings are liberally construed, a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled. Ivey v. Board of Regents of Univ. of Alaska, 673, F.2d 266, 268 (9th Cir. 1989).

The SAC fails to set forth essential, specific acts of each defendant that support the existence of the claimed conspiracy. Burns, 883 F.2d at 821. These

15

allegations are insufficient and the claim is subject to dismissal.

**F.    Fifth Cause of Action: Failure to Properly Train or Supervise**

Plaintiff alleges that "defendants" knowingly failed and refused to properly hire, train, supervise, and discipline custodial and medical staff personnel in order to provide Plaintiff with proper and timely medical attention. SAC ¶ 45. Plaintiff asserts that these failures led to unnecessary and wanton infliction of pain, suffering, and permanent physical injury in violation of Plaintiff's rights under the Eighth and Fourteenth Amendments. Id. Plaintiff does not name specific Defendants in his claim for failure to supervise, train, and discipline staff. See id.

Interpreting the SAC in the manner most favorable to Plaintiff, the only defendants who could arguably be considered to have had supervisory liability are Warden Borders and Dr. Farooq. As a result, the failure to train or supervise claim fails as a matter of law as to the remaining defendants.

With respect to Warden Borders and Dr. Farooq, the Court has found that the Second Cause of Action in the SAC, for deliberate indifference, passes screening based in part upon Starr v. Baca, 652 F.3d at 1207-08, in which the Ninth Circuit held (emphasis added):

> A defendant may be held liable as a supervisor under § 1983 'if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.' '[A] plaintiff must show the supervisor breached a duty to plaintiff which was the proximate cause of the injury. The law clearly allows actions against supervisors under section 1983 as long as a sufficient causal connection is present and the plaintiff was deprived under color of law of a federally secured right.'
>
> 'The requisite causal connection can be established . . . by

16

setting in motion a series of acts by others,' or by 'knowingly refus[ing] to terminate a series of acts by others, which [the supervisor] knew or reasonably should have known would cause others to inflict a constitutional injury.' 'A supervisor can be liable in his individual capacity for his own culpable action <u>or inaction in the training, supervision, or control of his subordinates</u>; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others.'

Thus, as to Warden Borders and Dr. Farooq, the Fifth Cause of Action is duplicative of the Second Cause of Action; as to all other defendants, it fails to state a claim upon which relief can be granted and is subject to dismissal.

## V.
## CONCLUSION

The Complaint largely fails to state a claim upon which relief may be granted and those insufficient claims are subject to dismissal. Because it is not absolutely clear that the Complaint's deficiencies cannot be cured by amendment, dismissal will be with leave to amend. Accordingly, the Court provides Plaintiff the following options:

1. If Plaintiff desires to proceed only on the Second Cause of Action only in the current Second Amended Complaint (Eighth Amendment deliberate indifference to serious medical needs, which includes as a factual predicate allegations of falsification of records and improper training and/or supervision) and only against defendants Dr. Duong, Dr. Farooq and Warden Borders, Plaintiff need take no further steps. Instead, after 30 (thirty) days have passed from the date of this Order, if the Court has not received a Third Amended Complaint from Plaintiff as outlined in option no. 2, below, the Court will direct the Clerk to issue

17

summonses on the Second Amended Complaint as to Dr. Duong, Dr. Farooq and Warden Borders in their respective individual capacities, and will commence the process of directing service of those three defendants by the United State Marshal Service, with Plaintiff's assistance;

OR

2. If Plaintiff wishes to assert claims against defendants other than Dr. Duong, Dr. Farooq, and Warden Borders or pursue claims other than the Second Cause of Action in the Second Amended Complaint, Plaintiff must, within 30 (thirty) days of the date of this Order, file a Third Amended Complaint ("TAC"), remedying the deficiencies discussed above. Specifically, the SAC must clearly identify each cause of action and identify which defendants are named in each cause of action, and it must clearly and succinctly describe what each defendant did or failed to do and the damage or injury that resulted. The Court will again screen the TAC after it is filed pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A. Any such TAC should bear the docket number assigned in this case; be labeled "Third Amended Complaint"; and be complete in and of itself without reference to the prior complaints or any other pleading, attachment or document. The Clerk is directed to send Plaintiff a blank Central District civil rights complaint form, which Plaintiff is encouraged to use.

Dated: November 20, 2017

JOHN D. EARLY
United States Magistrate Judge

18